UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IBRAHIMA BALDE,

                          Plaintiff,                    17-cv-1846 (PKC)

      -against-                                   OPINION
                                                                        AND ORDER

P.O. CHRISTOPHER RICKFORD, et al.,

                          Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Ibrahima Balde, who is now proceeding pro se,[1] sues six police officers employed by the Police Department of the City of New York under 42 U.S.C. §§ 1983 and 1988 alleging violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments. (Doc 1.) He brings claims against Officers Christopher Rickford, Joseph Basso, and Brett Bara arising from his March 15, 2014 arrest and claims against Officers Travis Duke, Douglas Macewen, and Georgette Williams arising from his March 26, 2014 arrest. Specifically, he alleges claims for false arrest, malicious prosecution, and denial of his right to a fair trial. Pre-trial discovery in this case has concluded. Defendants now move for summary judgment or dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., on all claims. Balde has not filed an opposition to defendants' motion. For the reasons outlined below, defendants' motion (Doc 33) is granted in part and denied in part.

---

[1] Plaintiff was originally represented by counsel in this matter. (Doc 1.) After the Court set a schedule on the summary judgment motion plaintiff's counsel filed a motion to withdraw citing ethical difficulties in representing Balde. (Docs 31, 32.) Defendants filed their summary judgment motion. (Doc 33.) On November 1, 2018 the Court granted counsel's motion to withdraw, directed Balde to consider retaining counsel or contacting the Court's pro se office for assistance, and stayed the pending motion for summary judgment until December 20, 2018. (Doc 38.) The Court noted that it would decide the summary judgment motion unopposed if Balde did not respond. (Id.)

Mailed to Balde 5/23/2019

BACKGROUND

The following facts are taken from the Complaint, plaintiff's deposition testimony, and defendants' statement of undisputed facts.[2] All reasonable inferences are drawn in plaintiff's favor.

I. The March 15, 2014 Arrest

On March 15, 2014, Balde was asked to leave the Bellevue Shelter because he had not signed in for a bed. (Pl.'s Dep. at 86 ll. 3−9; Doc 36-2.) The shelter gave him an address for a place to stay in Harlem. (Id. at 86 ll. 6−24.) Once outside, Balde asked a man for directions to the new address and the man instructed him to walk towards Fifth Avenue and catch a bus. (Id. at 88 ll. 1−3.) While waiting at the corner of Fifth Avenue for the light to change, he overheard the man with whom he had just spoken offer drugs to two other individuals. (Id. at 94 ll. 10−16.) The conversation lasted less than three minutes. (Id. at 98 ll. 13−15.) He then heard someone, presumably the man he had spoken with, "t[ake] off running" (id. at 94 l. 20), and one of the two other individuals say, "Oh my God, what the hell, what did you do," (id. at 88 ll. 8−9.) The individual looked at Balde and said, "Your friend robbed me, your friend took something from me." (Id. at 88 ll. 8−11, 94 ll. 19−25.) One of the two individuals also accused Balde of "taking money from him." (Compl. ¶16; Defs.'s Rule 56.1 ¶3; Pl.'s Dep. at 100 ll. 18−19 ("They accused me of saying I took something in his pocket . . . ."); see Pl.'s Dep. at 100 ll. 5−6.)

Balde continued walking and was stopped by a police car two blocks from where the alleged robbery occurred. (Defs.'s Rule 56.1 ¶¶3−5; Pl.'s Dep. at 99 ll. 8−9.) The individual who had accused Balde of stealing from him came out of the police car and again accused Balde

---

[2] Defendants' Rule 56.1 Statement adopts facts from plaintiff's complaint and deposition testimony. (See Defs.'s Rule 56.1 at 1 n.1; Doc 34.) Defendants have not submitted any additional evidence.

and 'his friend' of theft. (Pl.'s Dep. 195 ll. 3−5 ("Q: The person came out of the police car and identified you as the person that robbed him? A: Yes."); see id. at 99 ll. 9−11, 100 ll. 5−6, 15−20.) Officer Rickford stepped out of the police car and questioned Balde about the accusation. (Compl. ¶¶17−18; Defs.'s Rule 56.1 ¶7; Pl.'s Dep. at 102 l. 17–103 l. 13.) Balde was searched and found with cash in his pockets. (Pl.'s Dep. at 112 l. 20.) At the direction of Officer Rickford, Officers Basso and Bara arrested Balde. (Compl. ¶19; Pl.'s Dep. at 109 l. 20−110 l. 5.)

Balde was indicted by a grand jury in New York County for Grand Larceny in the Fourth Degree (New York Penal Law § 155.30) and Robbery in the Second Degree (New York Penal Law § 160.10). (Compl. ¶20.) He requested to testify before the grand jury but was not given the opportunity to do so. (Id. ¶¶21−22.) On July 2, 2014, the New York State Supreme Court dismissed the indictment because Balde had been denied his right to testify before the grand jury as required by New York Criminal Procedure Law § 190.50. (Id. ¶¶22−23.) The New York County District Attorney's Office did not re-indict Balde, and the charges were dismissed and sealed on September 23, 2014. (Id. ¶¶24−25.)

II. The March 26, 2014 Arrest

On March 26, 2014, Balde and his friend Abdoulay Sow saw a woman on the street. (Id. ¶30; Pl.'s Dep. at 91 l. 18, 121 ll. 1−5.) Balde's friend flirted with the woman and touched her hair. (Compl. ¶30.) Balde told his friend to stop touching the woman's hair. (Pl.'s Dep. at 128 ll. 5−7.) Balde and his friend proceeded to a restaurant. (Compl. ¶31.) When they left the restaurant, Officers Duke and Macewen, wearing plain clothes, "jumped plaintiff and his companion." (Id. ¶32; Defs.'s Rule 56.1 ¶20.) According to Balde's deposition testimony, Officers Duke and Macewen grabbed only Balde's friend. (Defs.'s Rule 56.1 ¶20; Pl.'s Dep. at

121 ll. 11−14, 124 l. 25–125 l. 3.) Balde grabbed Officer Macewen to defend his friend. (Defs.'s Rule 56.1 ¶22; Pl.'s Dep. at 121 ll. 18−19.) Police cars arrived, and an unnamed officer at the scene threw Balde to the ground. (Defs.'s Rule 56.1 ¶¶22−24; Pl.'s Dep. at 131 ll. 1−12; see Compl. ¶¶35−36.) Balde was arrested. (Compl. ¶36.) He was told at the police station that he was arrested because he was seen tapping his friend and whispering to him to take a woman's cell phone. (Pl.'s Dep. at 138 ll. 8−24, 139 ll. 7−10.) He was later indicted by a grand jury for Assault in the Second Degree (New York Penal Law § 120.05)[3] and Attempted Robbery in the Second Degree (New York Penal Law §§ 110.00, 160.10). (Compl. ¶37.) On September 22, 2015, the New York State Supreme Court dismissed the charges for failure to comply with his statutory right to a speedy trial, New York Criminal Procedure Law § 30.30. (Id. ¶39−40.)

STANDARD OF REVIEW

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted). The moving party bears the initial burden of demonstrating that no genuine factual dispute exists with respect to each material element of the claim. Vt. Teddy Bear Co. v. 1-800-Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

---

[3] The Complaint states that Balde was indicted for "assault in the second degree, a D felony." (Compl. ¶37.) He states in his deposition testimony that the police report indicated he was arrested for "assaulting the police officer causing my injury," (Pl.'s Dep. at 147 ll. 17−18), which may fall under New York Penal Law § 120.05(3).

When a motion for summary judgment is unopposed, courts "must review the motion . . . and determine from what it has before it whether the moving party is entitled to judgment as a matter of law," because "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Id. at 246, 244 (internal quotation marks and citation omitted). "[T]he district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Id. at 244.

Pro se litigants are afforded "special solicitude" when confronted with summary judgment motions. Willey v. Kirkpatrick, 801 F.3d 51, 71 (2d Cir. 2015) (internal quotation marks and citation omitted). When the Court granted Balde's counsel's motion to withdraw, the Court informed Balde of his options to retain counsel or solicit help from this district's pro se office to respond to the motion for summary judgment and informed him of the consequences of failing to do so. (Doc 38.) Although Balde has not submitted opposition papers, the Court draws every reasonable inference in his favor. Delaney, 766 F.3d at 167. "If . . . there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

Defendants argue in the alternative that plaintiff's claims may be dismissed under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim. The Second Circuit has recognized that a motion for summary judgment made solely on the pleadings is functionally the same as a motion to dismiss or a motion for judgment on the pleadings. Schwartz v. Compagnie Gen. Transatlantique, 405 F.2d 270, 273 (2d Cir. 1968); Risco v. McHugh, 868 F. Supp. 2d 75, 106

n.45 (S.D.N.Y. 2012). Defendants' arguments cite to Balde's deposition testimony and their Rule 56.1 Statement, which in turn cites to the deposition testimony. (Docs 34, 35.) Because their arguments do not rest solely on the pleadings they will be considered under the standard for summary judgment.

DISCUSSION

    I.    Summary Judgment Will Be Granted as to the March 15, 2014 Arrest But Not as to the March 26, 2014 Arrest

        A.  Legal Standard for False Arrest

Section 1983 false arrest claims are "substantially the same as claims for false arrest . . . under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citation omitted). An officer can avoid liability for false arrest by demonstrating that "(1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). "Probable cause is an absolute defense to a false arrest claim." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (internal quotation marks, citation, and alteration omitted). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Id. (internal quotation marks and citation omitted). In evaluating probable cause, "[a] court must consider only those facts available to the officer at the time of the arrest and immediately before it." Id. (internal quotation marks, citation, and alterations omitted). Probable cause "is a fluid standard that does not demand hard certainties or mechanistic inquiries; nor does it demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or

more likely true than false." Figueroa v. Mazza, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks and citation omitted).

If probable cause is not found to exist, the Court then considers whether a qualified immunity defense applies. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A police officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Figueroa, 825 F.3d at 100 (internal quotation marks and citation omitted); see Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (characterizing qualified immunity as "arguable" probable cause). "[A]n arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed." Figueroa, 825 F.3d at 100 (internal quotation marks omitted).

B. The March 15, 2014 Arrest

Defendants argue probable cause exists for the March 15, 2014 arrest because a putative victim of a crime identified Balde as the perpetrator of the crime. "[A] victim's identification is typically sufficient to provide probable cause" absent "circumstances that raise doubts as to the victim's veracity." Stansbury, 721 F.3d at 90 (quotations and citation omitted); see Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012). "[I]nformation provided by an identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy, and [the Second Circuit] ha[s] endorsed the proposition that an identified citizen informant is presumed to be reliable." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal

quotation marks and citation omitted); see Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). In other words, "[i]nformation about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated." Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994).

Viewing the evidence in the light most favorable to Balde and considering the "totality of the circumstances," Panetta, 460 F.3d at 395, probable cause existed to arrest Balde on March 15, 2014. Balde admits that the victim who accused him is the same individual who was present on the street corner when the alleged theft occurred. (Pl.'s Dep. at 88 ll. 7−17 (discussing the individual who was robbed as the same individual who Balde "s[aw] coming out of the police car" and "point[ing] a finger at [Balde]").) The victim was driven by police to Balde's location where the victim identified him as the thief. Officer Rickford then stepped out of the police car and questioned Balde about the incident using information given to him by the victim. (Id. at 103 ll. 16−20 (Officer Rickford "asked me if your friend did this to this man . . . ."); see id. at 102 l. 17−103 l. 13, 194 ll. 18−20.) The victim accused Balde of taking money (Compl. ¶16; Pl.'s Dep. at 167 ll. 22−23) and a search of Balde revealed "cash in [his] pocket," (Pl.'s Dep. at 112 l. 20.) This is sufficient to demonstrate probable cause. Oliveira, 23 F.3d at 647; see Grace v. City of New York, 16 cv 4244 (RRM) (LB), 2018 WL 1368046, at *2−3 (E.D.N.Y. Mar. 16, 2018) (finding probable cause where unidentified victim identified plaintiff as her attacker).

There are no circumstances raising doubt as to the victim's veracity. Stansbury, 721 F.3d at 90. Balde states in his deposition that the victim "accused me of saying I took something in his pocket" but "he knew I'm not the one that did that and I don't have nothing." (Pl.'s Dep. at 100 ll. 18−21.) He also states that the victim may have been motivated to lie in the

hopes that Balde would lead law enforcement to the actual thief who the victim believed was Balde's friend. (Id. at 167 ll. 9−14.) "[C]onflicting accounts between a complainant and the accused do not negate probable cause." McIntosh v. City of New York, 14 cv 51 (FB)(ST), 2017 WL 473840, at *4 (E.D.N.Y. Feb. 3, 2017), aff'd, 722 Fed. App'x 42 (2d Cir. 2018); see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); Iocovello v. City of New York, 14 cv 4949 (KPF), 2016 WL 7223413, at *7 (S.D.N.Y. Dec. 13, 2016) ("The Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification or alleged victim of a crime." (internal quotation marks and citation omitted)). Balde's "mere conjecture and surmise" as to the victim's motivation does not raise doubt as to the victim's veracity. Savino v. City of New York, 331 F.3d 63, 73 (2d Cir. 2003) (internal quotation marks and citation omitted).

Balde alleges that Officer Rickford "falsely and maliciously informed" Officers Bara and Basso that Balde had stolen from the victim. (Compl. ¶19.) Police officers are "entitled to rely on the allegations of fellow police officers." Martinez, 202 F.3d at 634; see Panetta, 460 F.3d at 395. Officer Rickford was present when the victim identified Balde as the individual who stole from him and Rickford then questioned Balde about the victim's allegations. (Compl. ¶16; Pl.'s Dep. at 102 l. 17–103 l. 20.) Officers Bara and Basso were entitled to rely on the information Officer Rickford heard from the victim and from Balde.

Because there is no genuine dispute concerning the material facts that give rise to probable cause, summary judgment will be granted to defendants Rickford, Bara, and Basso, who are named only with respect to the March 15, 2014 arrest.[4]

C.  The March 26, 2014 Arrest

Defendants argue probable cause existed for the March 26, 2014 arrest for two reasons.  First, defendants state in their moving papers that Officer Williams saw Balde tap his friend's chest and motion in the direction of the woman who Balde's friend later allegedly tried to rob.  (Doc 35 at 10.)[5]  Attempted robbery in the second degree under New York law requires a person with intent "engage in conduct which tends to effect the commission of" "forcibly steal[ing] property . . . when . . . aided by another person actually present."  New York Penal Law §§ 110.00, 160.10.

It is defendants' burden to demonstrate that no genuine factual disputes exists. Vt. Teddy Bear Co., 373 F.3d at 244.  Defendants have submitted no evidence in support of their motion besides Balde's deposition testimony.  Balde's testimony states that he and his friend were accosted by plain clothes officers and that any story relating to him tapping his friend's chest is false.  (Pl.'s Dep. at 131 ll. 17−19, 175 ll. 18−21.)  With no testimony from any defendants, witness, or the woman in question, Balde's version of events stands unrebutted.

Balde mentions in his testimony a lineup at the precinct house after his arrest in which he was told by police officers that a woman identified him as the person who attempted to rob her.  (Pl.'s Dep. at 201 ll. 12−14 ("Me and Mr. Sow were in that room and we come out, and

---

[4] Defendants make a blanket argument that they are alternatively entitled to qualified immunity on all claims. Where probable cause is found, defendants are "a fortiori . . . entitled to qualified immunity."  Marcavage v. City of New York, 689 F.3d 98, 110 n.7 (2d Cir. 2012).
[5] The Court construes defendants' argument to assert probable cause based on the crime Balde was later charged with, that is, attempted robbery in the second degree.

- 10 -

they said the victim was here and pointed you out in the lineup.").) He also describes seeing a police report after the arrest that stated "[a woman] called the cops on us and identified the clothes Mr. Sow got on. The officer said that is the report they got from the lady saying I was whispering to Mr. Sow to go to her purse." (Id. at 177 ll. 5−10.) Viewing all evidence in a light most favorable to Balde, neither of these statements confirm what knowledge any officers, let alone the named officers, had "at the time of Balde's arrest or immediately before." Stansbury, 721 F.3d at 89. There is no testimony from defendants in the summary judgment record, so the Court relies on Balde's characterization of the events. The lineup appears to have occurred after Balde was arrested, and there is no information to confirm at what point in time the victim called police in relation to Balde's arrest on March 26, 2014, who she spoke with, or if the call happened at all.

"[S]ubsequent events could supply facts supporting probable cause in which event the arrestee may have a good claim for false arrest up to but ending with facts supporting probable cause." Clark v. City of New York, 16 cv 7744 (PKC), 2018 WL 4372671, at *4 (S.D.N.Y Sept. 13, 2018); see Jenkins v. City of New York, 478 F.3d 76, 91, 93 (2d Cir. 2007) (holding that the later identification of plaintiff by witnesses in a lineup provided probable cause as of that point in time but did not extinguish the claim for the pre-lineup period of time). Even if there is a "temporal limit" on Balde's false arrest claim, Clark, 2018 WL 4372671, at *3, at this stage defendants have not met their burden to demonstrate that no genuine factual dispute exists for Balde's March 26, 2014 arrest.

Defendants alternatively state that probable cause existed because Balde could have been arrested for harassment in the second degree under New York Penal Law § 240.26 for grabbing Officer Macewen. "[A] claim for false arrest turns only on whether probable cause

existed to arrest a defendant . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

Harassment in the second degree under New York law requires, among other things, that an individual "strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . ." New York Penal Law § 240.26. "Although not rising to the level of an assault causing physical injury, petty forms of offensive touching, such as striking, shoving and kicking, are prohibited when committed with the intent to annoy, harass or alarm the victim." People v. Bartkow, 96 N.Y.2d 770, 772 (2001) (citation omitted).

Under New York Penal Law § 35.15, individuals may use physical force "when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person . . ." Under Second Circuit precedent, if an officer reasonably suspects that an individual is engaged in the use of force for self-defense, probable cause to arrest may not exist. Jocks, 316 F.3d at 136; see Polanco v. City of New York, 14 cv 7986 (NB), 2018 WL 1804702, at *7 (S.D.N.Y. Mar. 28, 2018) (collecting cases involving alleged use of force in self-defense); Jackson v. City of New York, 939 F. Supp. 2d 235, 251−52 (E.D.N.Y. 2013) (denying summary judgment because of a material issue of fact on the use of self-defense for an arrest based on harassment in the second degree). An officer may not "deliberately disregard facts known to him which establish justification" for an exculpatory defense. Jocks, 316 F.3d at 136.

According to Balde, Officers Macewen and Duke, in plain clothes, "jumped" either Balde and his friend or just his friend. (Compl. ¶32; Pl.'s Dep. at 121 ll. 11−14, 124 l. 25–125 l.3.) Balde was unaware the individuals were undercover officers. (Pl.'s Dep. at 131 ll. 17−19.) Balde "attempted to defend himself from the physical force leveled against him by defendant Macewen." (Compl. ¶34.) At other times Balde states he "grabbed" Officer Macewen to restrain the plain clothes officers after they attacked Balde's friend. (Pl.'s Dep. at 131 l. 1, 132 l. 7, 136 ll. 6, 10, 174 l. 8.) Defendants have come forward with no evidence that the officers displayed a badge or otherwise identified themselves as officers.

There is a material issue of fact as to whether Balde grabbed Office Macewen in self-defense, in which case probable cause would not exist to arrest Balde for harassment in the second degree.[6] A reasonable jury could find that Officer Macewen should have known that Balde was acting in self-defense on the facts alleged here. Balde alleges that he and his friend were approached and physically assaulted by individuals in plain clothes who did not identify themselves as police; Balde then attempted to protect himself and his friend against this use of force. Defendants' motion for summary judgment on the false arrest claim for the March 26, 2014 arrest is denied.

Defendants also allege that, even if the March 26, 2014 arrest was unlawful, they are entitled to the defense of qualified immunity because the officers relied on victims to arrest Balde. (Doc 35 at 25.) Defendants rely solely on Balde's deposition testimony as evidence for this claim. (Id. (citing Pl.'s Dep. at 149 l. 9–147 l. 10, 173 l. 16–174 l. 5, 176 l. 25−177 l. 15).)

The deposition testimony does not state that Officers Macewen, Williams or Duke relied on putative victims' testimony when they arrested Balde on March 26, 2014. On the

---

[6] A material issue on the question of self-defense also defeats granting summary judgment for probable cause to arrest Balde for assault in the second degree, the crime with which he was actually charged.

assault charge, as explained above, there is a material question on self-defense that defeats a defense of qualified immunity. Jocks, 316 F.3d at 135−36; see McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006) (denying qualified immunity on summary judgment where parties disputed whether plaintiff acted in self-defense against a plain clothes officer).

Defendants argue without citation to supporting evidence that the woman with whom Balde's friend flirted was the victim of an attempted robbery and that she told police she heard Balde whisper to his friend to steal her phone. Balde's deposition testimony, which is the only evidence submitted in the record by defendants, states the following: (a) the police's claim that Balde whispered to his friend to steal her cellphone is "false information," (Pl.'s Dep. at 175 l. 18), and (b) Balde read a police report after his arrest in which it was written that a woman "called the cops on us and identified the clothes Mr. Sow got on. The officer said that this is the report they got from the lady saying that I was whispering to Mr. Sow to go to her purse," (id. at 177 ll. 5−10.) The record contains no evidence to inform the Court when the woman allegedly called the police or whether her information was communicated to the named officers. The deposition testimony further states that Balde was told at a different time as reason for his arrest that Officer Williams, not the putative victim, "had seen Plaintiff tap his friend's chest." (Id. at 145 ll. 19−21.) Because the facts of record do not establish as a matter of law that "it was objectively reasonable for the officer[s] to believe that probable cause existed" or "officers of reasonable competence could disagree on whether the probable cause test was met," Figueroa, 825 F.3d at 100, Officers Macewen, Duke and Williams have not established that they are entitled to summary judgment based on qualified immunity for the March 26, 2014 arrest.

II.  Balde's Malicious Prosecution Claim Fails

A. Legal Standard for Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160−61 (2d. Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 161 (internal quotation marks and citation omitted).

B. The March 15, 2014 Arrest

This Court has concluded that the officers had probable cause to arrest Balde on March 15, 2014. That finding "is a defense to a claim of malicious prosecution if it is not later nullified by information establishing the defendant's innocence . . . ." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014); see Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003) (stating probable cause is a defense unless "dissipate[d]," or when "the groundless nature of the charge [is] made apparent by the discovery of some intervening fact") (internal quotation marks and citation omitted). There is no evidence in the record from which a reasonable fact finder could determine that information establishing the defendant's innocence or the groundless nature of the charge arose after his arrest on March 15, 2014. Defendants' motion for summary judgment on the claim of malicious prosecution arising out of the March 15, 2014 arrest is granted.

C. The March 26, 2014 Arrest

There is no dispute that the proceedings following the March 26, 2014 arrest terminated in Balde's favor. The defendants argue that Balde has not submitted evidence from which a reasonable fact finder could conclude that any of the defendants initiated a criminal proceeding, lacked probable cause, or were motivated by actual malice. The Court agrees with the defendants.

There is no evidence that any of the individual defendants named in connection with the March 26, 2014 arrest, Officers Macewen, Duke, or Williams, "initiat[ed] or continu[ed] . . . a criminal proceeding." Manganiello, 612 F.3d at 161. "While police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015) (internal quotation marks, alterations and citations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case," id., or "showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint," Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382−83 (S.D.N.Y. 2005) (internal citations omitted).

A plaintiff must also allege facts "demonstrating which officer is responsible for the alleged malicious prosecution." Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) (citation omitted). "[G]roup pleading, lumping . . . three defendants together without pleading facts demonstrating what each did that makes him liable," is insufficient. Id.; see Colon v.

Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants . . . is a prerequisite to an award of damages under [section] 1983.").

The Complaint states in a conclusory manner that "Defendants Duke, Macewen and Williams" "violated plaintiff's rights . . . to be prosecuted without malice." (Compl. ¶41.) Balde makes no allegations as to any individual police officer's conduct in his Complaint, (Compl. ¶¶29−43) and offers no testimony in his deposition related to who formally charged him, filled out affidavits, swore to a complaint, or otherwise initiated a criminal proceeding.

Balde has not demonstrated a genuine issue of material fact related to probable cause for the commencement of the proceeding. A presumption of probable cause is created by a grand jury's indictment, Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003), which "holds even if the indictment was subsequently dismissed," Lopez v. City of New York, 14 cv 1660 (PKC), 2014 WL 5090041, at *2 (S.D.N.Y. Oct. 10, 2014). The presumption may be overcome "by evidence establishing that [(a)] the police witnesses have not made a complete and full statement of facts," (b) "that they have misrepresented or falsified evidence," or (c) that they have "otherwise acted in bad faith." Boyd, 336 F.3d at 76 (internal quotation marks and citation omitted).

Balde was indicted by a grand jury, creating a presumption of probable cause. (Compl. ¶37.) Despite having an extended period of discovery (Docs 21, 23), Balde has not rebutted the presumption. He submitted no evidence on which officers testified before the grand jury. When asked directly whether he knew "the names of the officers who . . . gave false information to the district attorney's office concerning the charges related to [his] March 26, 2014 arrest," he stated, "I don't know." (Pl.'s Dep. at 177 ll. 16−20; see id. at 175 l. 18−177 l. 20.) Where, as here, there is no evidence that officers are "involved in any of the post-arrest

conduct that led to" plaintiff's prosecution, they lack personal involvement to be liable for malicious prosecution. Brandon v. City of New York, 705 F. Supp. 2d 261, 274−75 (S.D.N.Y. 2010). And "where a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise." Id. at 273; see Savino, 331 F.3d at 73; Cotto v. Pabon, 07 civ 7656 (AJP), 2008 WL 4962986, at *14 (S.D.N.Y. Nov. 20, 2008) (collecting cases).

Because Balde presents no evidence on any individual defendant's post-arrest conduct, there is no genuine dispute of material fact on the element of malice. Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (holding malice requires "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive" (internal quotation marks and citation omitted)). Defendants' motion is granted on the malicious prosecution claim related to charges arising from the March 26, 2014 arrest.

### III. Balde's Denial of a Fair Trial Claim Fails

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . ." Garnett v. Undercover Officer C0039, 838 F.3d 265, 275 (2d Cir. 2016) (quoting Ricciuti, 124 F.3d at 130). "[T]here need not be an actual trial; rather, the claim can accrue when fabricated information is forwarded to a prosecutor and results in the deprivation of a defendant's liberty." Soomro v. City of New York, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016). Unlike for claims of malicious prosecution, probable cause is not a defense to a claim for denial of a fair trial. Garnett, 838 F.3d at 278; Ricciuti, 124 F.3d at 129−30.

The Court will grant defendants' motion on Balde's denial of a fair trial claim. As discussed above, Balde's conclusory allegations fail to allege a genuine dispute of material

fact as to any named officer's communication with prosecutors, testimony at the grand jury hearings, or whether any evidence or alleged evidence led to a deprivation of plaintiff's liberty. The "paucity of detail dooms [Balde's] claim for denial of the right to a fair trial." Culpepper v. City of New York, 14 cv 6585 (ALC), 2016 WL 5334978, at *6 (S.D.N.Y. Sept. 21, 2016).

IV.     Any Alleged Excessive Force Claim Fails

Balde has not specifically plead a claim for excessive force. Defendants note that Balde could be alleging such a claim in paragraphs 32 and 36 of the Complaint. (Compl. ¶¶32, 36 (alleging Officers Duke and Macewen "jumped" Balde and "threw [him] onto the ground" during the March 26, 2014 arrest).) Although "[t]here is no excuse for his lawyer's failure to state such a claim in plain language," the Court will infer a claim in spite of "the inartful wording of the complaint." Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015).

Any alleged excessive force claim would not survive on this record. Balde offers no evidence that any officer "jumped" him and in his deposition testimony he repeatedly states that the officers only "jumped" his friend Mr. Sow. (See Pl.'s Dep. at 124 l. 23−125 l. 3, 125 ll. 8−10, 129 ll. 9−13, 132 ll. 6−10, 133 ll. 2−3.) Given this testimony, no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable towards Balde.

Balde repeatedly states in his deposition testimony that he does not know which officer "slammed [him] to the ground." (Pl.'s Dep. at 131 ll. 8−10 ("Q: Did you see who that person was that slammed you to the ground? A: No, it was nighttime. I can't remember . . . ."), 136 ll. 12−15 ("[S]omeone came from behind me and slammed me to the ground. I don't know who that person is.").) "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." Colon, 58 F.3d at 873 (internal quotation marks and citation omitted). There is no evidence on the record from

which a reasonable fact finder could infer personal involvement of any named officer when Balde was allegedly thrown on the ground.

CONCLUSION

Defendants' motion for summary judgment (Doc 33) is DENIED as to Balde's false arrest claim for the March 26, 2014 arrest and otherwise GRANTED. The Clerk is directed to terminate the motion (Doc 33.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 23, 2019